**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**DASHONE HUGHEY,**

|                          |                    |
|--------------------------|--------------------|
| **Plaintiff,**           | **17 CV 2500**     |
| -against-                | **COMPLAINT**      |

**EXPERIAN INFORMATION SOLUTIONS, INC.;**
**TRANS UNION, LLC; EQUIFAX INFORMATION**
**SERVICES, LLC; RENTGROW, INC; NATIONAL**
**CREDIT SYSTEMS, INC.; and I.C. SYSTEM, INC.**

                          **Defendants.**
-------------------------------------------------------------------x

The Plaintiff, DASHONE HUGHEY ("Plaintiff"), by and through his undersigned counsel,

Mallon Consumer Law Group, PLLC, brings this action against, Defendant EXPERIAN

INFORMATION SOLUTIONS, INC. ("Experian"), Defendant TRANS UNION, LLC ("Trans

Union"), Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), Defendant

NATIONAL CREDIT SYSTEMS, INC. ("NCS"), Defendant RENTGROW, INC. ("RentGrow")

and Defendant I.C. SYSTEM, INC. ("ICS"), and alleges the following, upon information and belief:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants Experian, Trans Union, Equifax, and

RentGrow (hereinafter collectively referred to as the "CRA Defendants for violating the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and the New York Fair Credit Reporting Act

("NY FCRA"), N.Y. GBL § 380 *et seq.*, by erroneously placing derogatory credit information that

did not belong to Plaintiff on his consumer reports, and for failing to conduct reasonable

investigations after Plaintiff lodged multiple disputes challenging the reporting of the inaccurate

information and demanding it be removed from his consumer reports.  Despite Plaintiff's repeated efforts, the CRA Defendants refused to remove the derogatory credit information from the Plaintiff's respective consumer reports, causing the Plaintiff significant harm.

2.     Plaintiff also brings this action against Defendant NCS for violating section 15 U.S.C. § 1681s-2(b) of the FCRA by failing to conduct reasonable investigations of the subject derogatory credit information after Plaintiff repeatedly disputed the reporting thereof to the CRA Defendants on multiple occasions, to no avail.  Defendant NCS wrongfully verified that the subject derogatory credit information was being reported accurately to the CRA Defendants, who subsequently continued to erroneously list the subject derogatory credit information on the Plaintiff's consumer reports, to his detriment.

3.     Finally, Plaintiff brings this action against Defendant NCS and Defendant ICS for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by attempting to collect a debt from the plaintiff that he did not owe and falsely reporting to the CRA Defendants that Plaintiff owed a debt which he did not in fact owe.

4.     Plaintiff further alleges that as a direct and proximate result of Defendants' unlawful actions, conduct, and omissions, the erroneous derogatory credit information wrongfully listed on Plaintiff's consumer reports caused him to suffer actual damages including, *but not limited to*, denials of applications for credit, denials of multiple apartment lease applications, limiting his opportunities for credit, other economic damages and damage to reputation, inability to obtain an apartment lease and other difficulties during Plaintiff's housing search, expenditure of time and resources, in addition to emotional distress, annoyance, aggravation, and frustration.

5.     Plaintiff brings this action for actual, statutory, and punitive damages, as well as for

statutory attorney's fees and litigation costs, pursuant to the FCRA, 15 U.S.C. § 1681 *et seq.*, the NY FCRA, N.Y. GBL §§ 380 *et seq.*, and the FDCPA, 15 U.S.C. § 1692 *et seq.*  Additionally, Plaintiff seeks equitable relief requiring each of the CRA Defendants to implement and maintain procedures to ensure future compliance with the NY FCRA.

## JURISDICTION AND VENUE

6.   The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 15 U.S.C. § 1692k(d).

7.   This Court has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332, as well as supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

8.   Venue is properly laid pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.   Plaintiff, a natural person, is a resident of the State of New York, County of New York, and qualifies as an individual "consumer" within the meaning of the FCRA, the NY FCRA, and the FDCPA.  See 15 U.S.C. § 1681a(c); N.Y. GBL § 380-a(b); 15 U.S.C. § 1692a(3).

10.  Defendant Experian is an Ohio corporation, duly authorized and qualified to do business in the State of New York.  Experian qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA.  See 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

11.  Defendant Trans Union is a Delaware corporation, duly authorized and qualified to do business in the State of New York.  Trans Union qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA.  See 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

12.  Defendant Equifax is a Georgia corporation, duly authorized and qualified to do business in

the State of New York.  Equifax qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA.  <u>See</u> 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

13.  Defendant RentGrow is a Massachusetts corporation, duly authorized and qualified to do business in the State of New York.  RentGrow qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA.  <u>See</u> 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

14.  Defendant NCS is a Georgia corporation, duly authorized and qualified to do business in the State of New York.  NCS qualifies as a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

15.  Defendant NCS is engaged in the business of collecting debts.  The principal purpose of NCS is the collection of debts, and Defendant regularly attempts to collect debts allegedly due to another and, as such, qualifies as a "debt collector" within the meaning of the FDCPA.  <u>See</u> 15 U.S.C. § 1692a(6).

16.  Defendant ICS is a Minnesota corporation, duly authorized and qualified to do business in the State of New York.  ICS qualifies as a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

17.  Defendant ICS is engaged in the business of collecting debts.  The principal purpose of NCS is the collection of debts, and Defendant regularly attempts to collect debts allegedly due to another

4

and, as such, qualifies as a "debt collector" within the meaning of the FDCPA.  See 15 U.S.C. §
1692a(6).

## FACTUAL BACKGROUND

18.  As a Bank of America, N.A. ("BOA") accountholder, Plaintiff utilizes BOA's identity theft
service, known as Privacy Assist.

19.  In or around October 2015, Plaintiff received a BOA Privacy Assist notification regarding a
collections account with Defendant NCS (hereinafter the "subject NCS collections account"), which
Plaintiff did not recognize.

20.  Plaintiff immediately obtained copies of his credit reports prepared by each of the CRA
Defendants.

21.  Upon inspecting his consumer reports, Plaintiff discovered that a National Credit Systems
collections account (hereinafter the "subject NCS collections account")—which Plaintiff did not
recognize as belonging to him—was being listed on his consumer reports prepared by each of the
CRA Defendants.

22.  Plaintiff learned that the subject NCS collections account stemmed from an apartment lease
with original creditor Highland Mill Lofts.  At some point, the balance of the unpaid rent—
amounting to $4,760.00—was transferred to debt collector Defendant NCS and placed for
collections.

23.  Plaintiff researched Highland Mill Lofts, and discovered that the apartment building was
located in Charlotte, North Carolina.

24.  Plaintiff has never lived in North Carolina, nor has Plaintiff ever leased an apartment located
in North Carolina.

25.  On October 23, 2015, Plaintiff called Defendant NCS, in an attempt to clarify that the subject NCS collections account did not actually belong to him.

26.  During that phone conversation, Plaintiff requested that Defendant NCS provide proof supporting its claim that the subject NCS collections account in fact belonged to the Plaintiff and was therefore properly listed on his consumer reports.

27.  Plaintiff never received any such verification of the alleged debt from Defendant NCS, despite his specific request therefor.

28.  Defendant NCS also advised Plaintiff during the October 23 phone call that it would send him a fraud packet for Plaintiff to complete and return.

29.  Plaintiff never received a fraud packet from Defendant NCS, despite assurances to the contrary.

30.  Plaintiff then placed a call to Highland Mill Lofts, the original creditor of the fraudulent North Carolina apartment lease.

31.  During that phone call, Plaintiff inquired as to how someone was able to lease an apartment in his name without having his ID or his personal identifying information.  The representative with whom Plaintiff spoke read him the passport identification number on file for the subject apartment, which did not match Plaintiff's passport identification number.  Plaintiff then provided the representative with his date of birth and Social Security number; the representative informed Plaintiff that Highland Mill Lofts did not have his date of birth or Social Security number on the file, or in their system.

32.  Plaintiff also discovered through an online search of the North Carolina Court System, Mecklenburg County, records that the individual who rented the subject apartment was served with

an eviction notice, Index No. 2015CVM012541, on or around July 10, 2015.

33.   Again, Plaintiff has never lived in North Carolina, nor has he ever leased an apartment located in North Carolina.  Furthermore, Plaintiff has never been served with an eviction notice—in North Carolina or otherwise—nor has he ever had to defend himself in court.

34.   On November 10, 2015, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), requesting the agency's help in having the subject NCS collections account removed from his consumer report.

35.   On November 25, 2015, Defendant NCS responded to Plaintiff's CFPB complaint, asserting its belief that Plaintiff was the responsible obligor of the subject collections account.  Defendant NCS failed to submit along with its response any proof indicating that the subject NCS collections account in fact belonged to the Plaintiff.

36.   Unable to correct the erroneous notation via the CFPB, Plaintiff then sought recourse by lodging disputes directly to each of the CRA Defendants.

**Facts Relating to the Conduct of Defendant Experian**:

37.   In or around December 2015 Plaintiff disputed the wrongful reporting of the subject NCS collections account with Experian.  Plaintiff explained that he never lived in North Carolina, nor had he ever leased an apartment in North Carolina; as such, Plaintiff was not the responsible obligor of the subject NCS collections account.  The dispute further requested that Defendant Experian immediately correct and remove the erroneous NCS collections account from his Experian report.

38.   Defendant Experian forwarded Plaintiff's dispute to Defendant NCS, the furnisher of the information, who was then obligated, pursuant to 15 U.S.C. § 1681s-2(b), to conduct investigations thereof and, if applicable, correct any inaccurate information.

7

39.  On January 6, 2016, Defendant Experian sent Plaintiff the results of its investigation initiated by Plaintiff.  Defendant Experian failed to remove the erroneous NCS collections account, instead continuing to wrongfully list the erroneous account on Plaintiff Experian consumer report, to his detriment.

40.  Plaintiff then obtained another copy of his Experian consumer report, dated February 5, 2016, and discovered that Defendant Experian was continuing to wrongfully list the erroneous NCS collections account.

41.  In or around March 2016, Plaintiff called Defendant Experian in order to lodge another dispute of the subject NCS collections account.

42.  On March 26, 2016, Defendant Experian sent Plaintiff the results of its investigation initiated by Plaintiff.  Defendant Experian again failed to remove the erroneous NCS collections account, instead continuing to wrongfully list the erroneous account on Plaintiff's Experian consumer report.

43.  Upon information and belief, Defendant Experian has listed and still continues to list the subject NCS collections account on Plaintiff's Experian consumer report, to his detriment.

**Facts Relating to the Conduct of Defendant Trans Union**:

44.   In or around February 2016, Plaintiff contacted Defendant Trans Union in order to dispute the wrongful reporting of the subject NCS collections account on his Trans Union consumer report.

45.  Defendant Trans Union forwarded Plaintiff's dispute to Defendant NCS, the furnisher of the information, who was then obligated, pursuant to 15 U.S.C. § 1681s-2(b), to conduct investigations thereof and, if applicable, correct any inaccurate information.

46.  Sometime thereafter, Defendant Trans Union sent Plaintiff the results of its investigation

initiated by Plaintiff.  Defendant Trans Union failed to remove the erroneous NCS collections account, instead continuing to wrongfully list the erroneous account on Plaintiff Trans Union consumer report, to his detriment.

47.  In or around April 2016, Plaintiff requested his free annual credit report from Defendant Trans Union.

48.  Curiously, Plaintiff received two separate credit reports in the same mailing from Defendant Trans Union—both dated May 31, 2016 and both bearing identical file numbers.

49.  The first report—addressed to "Dashone A. Hughey"— contained mostly accurate information.

50.  The second report, on the other hand—addressed to "Dashone Hughey"— and described by Trans Union as "an additional credit report for this consumer" contained inaccurate personal information and two collections accounts, none of which actually belong to the Plaintiff.

51.  Specifically, the second Trans Union report contained the following inaccurate personal information: (i) a name (Anthony Hughey); (ii) a P.O. box address located in Hartford, Connecticut; (iii) an address located in Charlotte, North Carolina; and (iv) three telephone numbers.

52.  The second Trans Union report further contained the following erroneous collections accounts: (i) the subject NCS collections account, and (ii) a collections account with Defendant ICS, original creditor Uncle Bob Self Storage (Personal Services), in the amount of $352.00 (hereinafter the "subject ICS collections account").

53.  The first Trans Union report did not contain either of the erroneous collections accounts listed on the second Trans Union report.

54.  On June 9, 2016, Plaintiff sent a letter to Defendant Trans Union disputing the entirety of

the above-described inaccurate personal information and erroneous collections accounts wrongfully appearing on his Trans Union consumer report.

55.   Along with his June 2016 dispute, Plaintiff explained that he never lived in North Carolina, nor had he ever leased an apartment in North Carolina; as such, Plaintiff was not the responsible obligor of the subject NCS collections account.  Plaintiff also speculated that the subject ICS collections account was related to the NCS collections account, as it did not belong to him; as such, Plaintiff was not the responsible obligor of the subject ICS collections account.  Plaintiff's dispute letter further requested that Defendant Trans Union immediately correct and remove the erroneous information from his Trans Union report.  Along with the June 2016 dispute letter, Plaintiff attached copies of his personal identifying information—including his Social Security card, driver's license, and passport.

56.   Defendant Trans Union forwarded Plaintiff's dispute to Defendant NCS and Defendant ICS, the furnishers of the information, who were then each obligated, pursuant to 15 U.S.C. § 1681s-2(b), to conduct investigations thereof and, if applicable, correct any inaccurate information.

57.   Plaintiff again received two separate dispute results (hereinafter the "first Trans Union dispute results" and the "second Trans Union dispute results") in the same mailing from Defendant Trans Union—again both dated July 7, 2016, and both bearing identical file numbers.

58.   The first Trans Union dispute results—again, addressed to "Dashone A. Hughey"— contained mostly accurate information.

59.   The second Trans Union dispute results - again addressed to "Dashone Hughey" – deleted some but not all of the erroneous personal information listed on the plaintiff's report and deleted the IC Systems account but falsely "verifying" that the NCS account belonged to the Plaintiff.

60.   Plaintiff is informed and believes that Defendant Trans Union has listed and still continues to list the subject NCS collections account on Plaintiff's Trans Union consumer report, to his detriment.

**Facts Relating to the Conduct of Defendant Equifax**:

61.   In or around November or December of 2015, Plaintiff sent a letter to Defendant Equifax disputing the wrongful reporting of the subject NCS collections account on his Equifax consumer report.   Plaintiff explained that he never lived in North Carolina, nor had he ever leased an apartment in North Carolina; as such, Plaintiff was not the responsible obligor of the subject NCS collections account.   The letter further requested that Defendant Equifax immediately correct and remove the erroneous NCS collections account from his Equifax report.

62.   Defendant Equifax forwarded Plaintiff's dispute to Defendant NCS, the furnisher of the information, who was then obligated, pursuant to 15 U.S.C. § 1681s-2(b), to conduct investigations thereof and, if applicable, correct any inaccurate information.

63.   On December 30, 2015, Defendant Equifax sent Plaintiff the results of its investigation initiated by Plaintiff.   Defendant Equifax failed to remove the erroneous NCS collections account, instead concluding simply that "[w]e verified that this item belongs to you."   Defendant Equifax instructed Plaintiff to contact Defendant NCS for further questions about the subject NCS collections account.   Consequently, Defendant Equifax continued to list the erroneous NCS collections account on Plaintiff Equifax consumer report, to his detriment.

**Damages Plaintiff Suffered due to Defendants' Unlawful Conduct**:

64.   Plaintiff applied for a credit card with TD Bank, N.A. ("TD Bank") in or around May 2016. On May 17, 2016, Plaintiff received a letter from TD Bank denying his credit card application.   TD

Bank based its decision on the information listed in Plaintiff's consumer reports obtained from Defendant Experian.

65.   On or around October 5, 2016 , Plaintiff applied for an apartment lease with Pelican Management.  On November 11, 2016, Plaintiff was informed that he would not be able to obtain an apartment lease due to the erroneous and derogatory information wrongfully listed on his consumer reports provided by Defendants RentGrow and Experian.

66.   On or around October 5, 2016 , Plaintiff applied for an apartment lease with Parkchester Management.  Shortly thereafter Plaintiff was informed that he would not be able to obtain an apartment lease due to the erroneous and derogatory information wrongfully listed on his consumer reports provided by Defendants RentGrow and Experian.

67.   The RentGrow reports provided to Pelican Management and Parkchester Management contained derogatory information regarding the Highland Mills Apartment and National Credit Systems which never belonged to the Plaintiff.

68.   On or about November 17, 2016 the Plaintiff submitted multiple dispute to RentGrow regarding the subject Highland Mill Apartments account.  Defendant RentGrow refused to remove the subject erroneous accounts from the Plaintiff's reports.

69.   Accordingly, Defendants' unlawful conduct, actions, and omissions—in violation of the FCRA, the NY FCRA, and the FDCPA—has caused Plaintiff to suffer economic damages including, *but not limited to*, a denial of at least one credit card application, denials of multiple apartment lease applications, limiting his opportunities for credit, other economic damages and damage to reputation, inability to obtain an apartment lease and other difficulties during Plaintiff's housing search, expenditure of time and resources, in addition to emotional distress, annoyance,

aggravation, and frustration.

**FIRST CAUSE OF ACTION**
VIOLATION OF THE FCRA, 15 U.S.C. § 1681 *et seq.*
Against Defendants Experian, Trans Union, Equifax, RentGrow and NCS

70.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

71.  Defendants Experian, Trans Union, Equifax and RentGrow each prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced numerous consumer reports regarding the Plaintiff, as that term is defined in the FCRA.  See 15 U.S.C. § 1681a(d).

72.  Such reports erroneously included false and derogatory credit information, as well as inaccurate personal information, actually belonging to someone other than the Plaintiff.  Defendants knew, or should have known, that the reports contained such erroneous information.

73.  Defendants Experian, Trans Union, Equifax and RentGrow (or, in the alternative, negligently) violated 15 U.S.C. § 1681e(b) by failing to maintain and/or follow reasonable procedures designed to ensure maximum possible accuracy when creating credit reports regarding the Plaintiff which erroneously contained the subject false and derogatory credit information, as well as inaccurate personal information, actually belonging to someone other than the Plaintiff.

74.  Defendants Experian, Trans Union, and Equifax and RentGrow willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigations of the Plaintiff's multiple disputes of the subject NCS collections account.

75.  Defendants Experian, Trans Union, Equifax, and RentGrow willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiff regarding his disputes.

76.  Defendants Equifax, Experian, Trans Union, and RentGrow willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i(a)(5) by failing to delete or modify the disputed erroneous and derogatory credit information, as well as the inaccurate personal information, from the Plaintiff's file after failing to verify the completeness and accuracy of that information.

77.  Defendants Equifax, Experian, Trans Union, and RentGrow each gave Defendant NCS notice of Plaintiff's disputes of the subject NCS collections account, thus triggering the information furnisher's duties under 15 U.S.C. § 1681s-2(b).

78.  After receiving notification of the Plaintiff's disputes, Defendant NCS willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable reinvestigations of Plaintiff's multiple disputes of the subject NCS collections account, and by failing to review all relevant information regarding Plaintiff's disputes thereof.

79.  Defendant NCS additionally willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information purportedly provided by the CRA Defendants in conducting its reinvestigations.

80.  As a direct and proximate result of Defendants' unlawful conduct, actions, and omissions, Plaintiff has suffered—and continues to suffer—actual economic and emotional distress damages, as set forth herein.

81.  The CRA Defendants each published credit reports regarding the Plaintiff on multiple occasions containing the subject erroneous and derogatory credit information, causing Plaintiff to suffer economic harm via a denial of at least one credit card application, denials of multiple apartment lease applications, limiting his opportunities for credit, other economic damages and damage to reputation, inability to obtain an apartment lease and other difficulties during Plaintiff's

housing search, expenditure of time and resources, in addition to emotional distress, annoyance, aggravation, and frustration.

82.   Accordingly, Defendants Experian, Equifax, Trans Union and RentGrow are thus liable to the Plaintiff for actual, statutory, and punitive damages in an amount to be determined by the trier of fact, as well as for the Plaintiff's litigation costs and reasonable attorney's fees incurred as a result of Defendants' FCRA violations, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**SECOND CAUSE OF ACTION**
VIOLATION OF THE NY FCRA, N.Y. GBL § 380 *et seq.*
Against Defendants Equifax, Experian, Trans Union and RentGrow

83.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

84.   Defendants Experian, Trans Union, Equifax, and RentGrow each prepared, compiled, issued, assembled, transferred, published and otherwise reproduced numerous consumer reports regarding the Plaintiff, as that term is defined in the NY FCRA.  See N.Y. GBL § 380-a(c)(1).

85.   Such reports erroneously included false and derogatory credit information, as well as the inaccurate personal information, actually belonging to someone other than the Plaintiff.  Defendants knew, or should have known, that the reports contained such erroneous information, in violation of N.Y. GBL § 380–j(a)(3).

86.   Defendants Experian, Trans Union, Equifax, and RentGrow willfully (or, in the alternative, negligently) violated N.Y. GBL § 380-j(e) by failing to maintain and/or follow reasonable procedures designed to ensure maximum possible accuracy when issuing credit reports regarding the Plaintiff which erroneously contained the subject false and derogatory credit information, as well as the inaccurate personal information, actually belonging to someone other than the Plaintiff.

15

87.  Defendants Experian, Trans Union, Equifax, and RentGrow willfully (or, in the alternative, negligently) violated N.Y. GBL § 380-f by failing to conduct reasonable reinvestigations of the Plaintiff's multiple disputes of the subject NCS collections account.

88.  Defendants Experian, Trans Union, Equifax, and RentGrow willfully (or, in the alternative, negligently) violated N.Y. GBL §§ 380-f(b) and (d) by failing to delete or modify the disputed erroneous and derogatory credit information, as well as the inaccurate personal information, from the Plaintiff's file after failing to verify the completeness and accuracy of that information.

89.  The CRA Defendants each published credit reports regarding the Plaintiff on multiple occasions containing the subject erroneous and derogatory credit information, causing Plaintiff to suffer economic harm via a denial of at least one credit card application, denials of multiple apartment lease applications, limiting his opportunities for credit, other economic damages and damage to reputation, inability to obtain an apartment lease and other difficulties during Plaintiff's housing search, expenditure of time and resources, in addition to emotional distress, annoyance, aggravation, and frustration.

90.  Accordingly, Defendants are thus liable to the Plaintiff for actual and punitive damages in an amount to be determined by the trier of fact, as well as for the Plaintiff's litigation costs and reasonable attorney's fees incurred as a result of Defendants' NY FCRA violations, pursuant to N.Y. GBL §§ 380-l and 380-m.

91.  Plaintiff is thus further entitled to an injunction requiring the CRA Defendants to remove the entirety of the subject erroneous and derogatory credit information, as well as the inaccurate personal information—and any and all other information actually belonging to someone other than Plaintiff—from the Plaintiff's respective credit files, and to implement policies and procedures

designed to ensure future compliance with the NY FCRA and prevent similar errors from occurring in the future.

**THIRD CAUSE OF ACTION**
VIOLATION OF THE FDCPA, 15 U.S.C. § 1692 *et seq.*
Against Defendant NCS and Defendant ICS Only

92.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

93.  Plaintiff qualifies as a "consumer" within the meaning of the FDCPA.  See 15 U.S.C. § 1692a(3).

94.  Defendant NCS and Defendant ICS both qualify as "debt collectors" within the meaning of the FDCPA.  See 15 U.S.C. § 1692a(6).

95.  The alleged debts underlying the Plaintiff's Complaint—*i.e.*, the subject NCS collections account and the subject ICS collections account—both qualify as a "debt" within the meaning of the FDCPA.  See 15 U.S.C. § 1692a(5).

96.  Defendant NCS and Defendant ICS each violated 15 U.S.C. §§ 1692f and 1692f(1) by falsely reporting to credit reporting agencies that Plaintiff owed a debt which he did not in fact owe.

97.  Defendant NCS and Defendant ICS each violated 15 U.S.C. § 1692e(2)(A) by falsely reporting to credit reporting agencies that Plaintiff owed a debt which he did not in fact owe.

98.  Defendant NCS and Defendant ICS each violated 15 U.S.C. § 1692e(8) by reporting information to credit reporting agencies which it knew or should have known to be false.

99.  Defendant NCS and Defendant ICS each violated 15 U.S.C. § 1692e(10) by falsely reporting to credit reporting agencies that Plaintiff owed a debt which he did not in fact owe.

100.Defendant NCS violated 15 U.S.C. § 1692e(8) by reporting the subject NCS collections

17

account to credit reporting agencies without noting that Plaintiff disputed the subject debt.

101. As a result of Defendants' unlawful conduct, actions, and omissions, Plaintiff has suffered and continues to suffer economic and emotional distress damages.

102. Accordingly, Defendants are thus liable to the Plaintiff for actual and statutory damages in an amount to be determined by the trier of fact, as well as for the Plaintiff's litigation costs and reasonable attorney's fees incurred as a result of Defendants' FDCPA violations, pursuant to 15 U.S.C. § 1692k.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CAUSES OF ACTION ASSERTED HEREIN.**

Dated: April 6, 2017
        New York, NY

                        Respectfully submitted,

                        _____
                        Kevin C. Mallon
                        Mallon Consumer Law Group, PLLC
                        One Liberty Plaza, Suite 2301
                        New York, NY  10006
                        (646) 759-3663
                        consumer.esq@outlook.com
                        *Attorneys for the Plaintiff*